UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

YASSER ASSAF,

    Plaintiff,

vs.

COTTRELL, INC., EAST COAST AUTO
TRANSPORT, INC., and EAST COAST
TRUCK AND TRAILER SALES, INC.,

    Defendants.

Case No. 10 CV 0085

Chief Judge James F. Holderman

Magistrate Judge Susan E. Cox

## MEMORANDUM OPINION AND ORDER[1]

Susan E. Cox, Magistrate Judge

    This case involves claims for breach of the implied warranty of safety of an automobile transport trailer manufactured by defendant Cottrell, Incorporated ("Cottrell").[2] Plaintiff, Yasser Assaf, alleges that he was injured when he slipped and fell after exiting a car that he had driven onto the upper level of a Cottrell trailer. Plaintiff claims his injuries are due to the trailer's lack of safety devices, including the absence of a fall arrest system.

    To support his allegations, plaintiff hired expert witness Nigel Ellis ("Ellis"), who prepared an expert report opining on the safety of the trailer and discussing alternative safety mechanisms that

---

[1] On December 1, 2009, this case was removed from the Circuit Court of Cook County on the basis of diversity, dkt. 1.

[2] Compl., dkt. 2.

1

he believed could have prevented plaintiff's injuries.[3] However, about two months after plaintiff's disclosure of Ellis,[4] at Ellis' May 16, 2009 deposition, Ellis testified to facts revealing that he has a past relationship with Cottrell, raising severe conflicts of issue. The District Judge granted Cottrell's motion to bar Ellis on August 16, 2011.[5] At issue is plaintiff's motion to substitute his expert witness [dkt. 77].[6] The Court rules on this motion following the District Judge's referral pursuant to 28 U.S.C. 636(b)(1) and Local Rule 72.1.[7]

I. Background

Ellis's participation in this suit began in September 2009.[8] Plaintiff's counsel contends that when his firm "vetted" Ellis, he "raised and discussed" whether conflicts of interest existed and learned that Ellis had "created a fall protection system which he offered to Cottrell."[9] After four telephone calls and an interview, plaintiff's counsel was satisfied Ellis would be eligible as an expert and retained Ellis to inspect the Cottrell trailer involved in plaintiff's fall.

Ellis inspected the trailer in November 2009, and on March 21, 2011, plaintiff filed Ellis' Expert Report.[10] In the report, Ellis opined that Cottrell failed to address the safety needs of drivers to prevent falls due to a lack of adequate handrails, walkways and ladder extensions.[11]

On May 16, 2011, Cottrell deposed Ellis.[12] An associate at plaintiff's firm presented Ellis at the deposition.[13] In response to questioning, Ellis revealed that in 2005 he had entered into a

---

[3] *See* Pl's Disclosures, Exh. 2, dkt. 53.
[4] *Id.*
[5] Cottrell's Mot. to Bar, dkt. 81.
[6] Pl.'s Mot., dkt. 79.
[7] On February 2, 2011, the case was assigned to Magistrate Judge Susan E. Cox for resolution of all discovery disputes, dkt. 48; *see* 28 U.S.C. 636(b)(1); N.D. Ill. R. 72.1.
[8] Pl.'s Mot. at 5.
[9] *Id.* at 4-5.
[10] Pl.'s Disclosures, Exh. 5, dkt. 53.
[11] *Id.* at 3.
[12] Pl's Resp to Mt to Dismiss, Exh. 4, Ellis Dep., dkt. 87.
[13] Pl.'s Reply, 8, dkt. 107.

2

confidentiality agreement with Cottrell.[14] Ellis also conceded that he had testified as an expert witness regarding Cottrell trailers in several cases in the past, and that in March 2007 he attempted to sell a new safety device to Cottrell executives even though he was, at that time, retained as an expert witness to testify against Cottrell.[15]

On June 29, 2011, Cottrell's counsel called plaintiff's counsel and sent a letter outlining the conflicts. Plaintiff did not respond. On July 6, 2011, Cottrell filed a motion to bar Ellis, detailing Ellis's conflicts of interest.[16] On July 19, 2011, Cottrell filed a combined *Daubert* and summary judgment motion. In the motion Cottrell argues that Ellis had insufficient knowledge of the safety systems he would be advocating as feasible alternatives to those used by Cottrell, given that the designs had not been peer reviewed, had not been standardized by any manufacturers, were not required by any regulation or standard, and had not been inspected or tested by Ellis personally.[17] Cottrell also contends that Ellis' testimony was unreliable because it was based on contradictory factual reports from plaintiff regarding the particulars of plaintiff's fall.[18] Cottrell then argues the Court should grant summary judgment for plaintiff's failure to provide expert testimony in support of his claim that defects existed in Cottrell's trailer.[19] The District Judge took Cottrell's summary judgment and *Daubert* motion under advisement.[20]

Cottrell filed another motion on August 1, 2011, moving to dismiss plaintiff's complaint for fraud on the court, based on Cottrell's contention that inconsistencies between plaintiff's complaint

---

[14] Pl's Resp to Mt to Dismiss, Exh. 4, Ellis Dep. at 124, dkt. 87.
[15] *Id.* at 50, 157-59.
[16] Cottrell's Mot. to Bar, 1, dkt. 58.
[17] Cottrell's *Daubert* Mot. and Mot. for Summ. J., 5-6 (hereinafter "Cottrell's *Daubert* Mot."), dkt. 66.
[18] Cottrell's *Daubert* Mot., 9-10.
[19] *Id.* at 13.
[20] Order on Mot. to Bar, dkt. 81.

3

and his deposition showed plaintiff had engaged in perjury.[21] On August 10, 2011, six days after the discovery deadline,[22] plaintiff moved to withdraw Ellis and to substitute an expert.[23]

On August 16, 2011, the District Judge granted Cottrell's motion to disqualify Ellis, mooting plaintiff's motion to withdraw.[24] On September 30, 2011, before receiving Cottrell's reply brief, the District Judge dismissed Cottrell's motion to dismiss for fraud on the court, finding that the inconsistencies cited by Cottrell did not reveal willful intent to provide false testimony.[25] On October 27, 2011, the District Judge reiterated that decision after considering Cottrell's reply brief.[26]

### III.   Legal Standards

The Federal Rules of Civil Procedure provide judges with broad discretion to resolve discovery disputes.[27] Although the Rules do not expressly address substitution of expert witnesses, Rules 26 and 37 guide our inquiry to the extent that the requested substitution is a request to modify the discovery schedule, and to the extent that plaintiff violated the District Judge's discovery schedule by filing the motion at issue after the August 4, 2011 discovery deadline.

Under Rule 26(a), parties must disclose witnesses according to the pretrial schedule set out by the court.[28] Rule 37 provides that "[i]f a party fails to disclose information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is

---

[21] Dkt. 75.
[22] Dkt. 47.
[23] Dkt. 77.
[24] Dkt. 81.
[25] Dkt. 90.
[26] Dkt. 101.
[27] *Bobkoski v. Bd. of Ed. of Cary Consol. Sch. Dist. 26*, 141 F.R.D. 88, 90 (N.D. Ill. 1992); *Spearman Industries, Inc. v. St. Paul Fire and Marine Ins. Co.*, 138 F.Supp.2d 1088, 1094 (N.D. Ill. 2001).
[28] Fed. R. Civ. P. 26(a).

4

harmless."[29] In addition to, or instead of, that sanction a court may also require the payment of reasonable expenses, including attorney's fees, caused by the violation.[30] Courts applying the Rule have held that "Rule 37 'precludes the trial judge from imposing the exclusion sanction unless it finds the party's failure to comply with Rule 26(a) was both unjustified and harmful to the opposing party.'"[31] But the Advisory Notes in the 2000 Amendment to the Rule explain that "[e]ven if the failure was not substantially justified, a party should be allowed to use the material that was not disclosed if the lack of earlier notice was harmless."[32]

When a party requests disclosure of an expert or expert report after the deadline for discovery, district courts in our Circuit have also provided guidance through a factor test.[33] The factors to consider include: (1) the surprise or prejudice to the blameless party; (2) any bad faith involved in not producing the evidence earlier; (3) the ability of the offending party to cure resulting prejudice; and (4) the amount of disruption to the trial that would result from permitting use of the evidence.[34]

In addition to these four factors, to assure full and fair consideration of this motion, we also

---

[29]Fed. R. Civ. P. 37(c)(1).
[30]Fed. R. Civ. P. 37(c)(1)(A).
[31]*Spearman Industries*, 138 F.Supp.2d at 1094 (quoting *Sherrod . Lingle,* 223 F.3d 605, 613 (7th Cir. 2000).
[32]Fed. R. Civ. P. 37, Advisory Committee Notes, 2000 Amendment.
[33]*Bronk v. Ineichen*, 54 F.3d 425, 432 (7th Cir. 1995) (affirming use of the four factors in excluding rebuttal witness who was not properly disclosed) (citing *Spray-Rite Services Corp. v. Monsanto Co.*, 684 F.2d 1226, 1245 (7th Cir. 1982) (applying the factors where a party moved to call a witness not included on the Rule 16 pretrial witness list), *aff'd* 465 U.S. 752); *Spearman Industries*, 138 F.Supp.2d at 1094 (applying the four *Spray-Rite* factors); *see also Vincent v. Omniflight Helicopters, Inc.*, No. 08-572, 2009 WL 4262578, *3 (E.D. Wis., Nov. 24, 2010) (permitting substitution after considering four factors, including the party's explanation for the violation, the amount of prejudice and the availability of a continuance); *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596-97 (4th Cir. 2003) (discussing the *Spray-Rite* factors as well as a fifth that considered the importance of the evidence to the party's position).
[34] *Spearman Industries*, 138 F.Supp.2d at 1094.

5

take into account the effect that denial of the motion would have on the disposition of the case.[35] Where exclusion of an expert witness necessarily entails dismissal of the case, the sanction "must be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction."[36] After considering the first four factors, including whether and to what extent plaintiff has violated Rule 26(a), we examine whether denial of plaintiff's motion and consequent dismissal would be a sanction proportional to the harm caused by the late filing of his motion to substitute Ellis.

IV. Discussion

Plaintiff's counsel argues that substitution is proper because he addressed Ellis's conflicts of interest appropriately and in a timely manner considering his circumstances. He further asserts that the associate who presented Ellis at his deposition departed from the firm shortly after Ellis' deposition, allegedly without informing him of the conflicts that came to light at the deposition. And despite Cottrell's claims to the contrary, plaintiff's counsel argues that Cottrell has not been prejudiced by revealing their expert's report because the same expert has produced nearly identical reports in past, similar, cases. Finally, plaintiff asserts that his claims will be foreclosed if he is not permitted to disclose a new expert witness.

Cottrell counters that plaintiff should not be permitted to substitute an expert because plaintiff knew by May 16, 2011 that conflicts existed. Cottrell also claims that plaintiff's counsel could, and should, have known of the conflicts even earlier. Cottrell argues that by waiting three months after receiving record notice of the conflicts before moving for substitution, plaintiff forced

---

[35] *Id.* at 1095 (permitting late disclosure of an expert report after weighing the four factors in favor of disclosure, then finding that dismissal would be improper because the report contained the plaintiff's "primary - if not sole - evidence" on a dispositive issue).

[36] *Sherrod*, 223 F.3d at 612 (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998)).

6

Cottrell to expend resources and reveal strategy in deposing Ellis and in filing two motions, including the motion to bar Ellis and the *Daubert* and summary judgment motion. And even if substitution is granted Cottrell asserts that, to minimize prejudice, the testimony of plaintiff's new expert should be limited to the report and opinions articulated by Ellis.

**A. Prejudice**

As noted, Rule 37 permits sanctions for failure to disclose information unless that failure is: (1) harmless, or; (2) substantially justified. We begin our analysis by considering whether plaintiff's violation was harmless.[37] This is essentially the first of the four factor test: whether Cottrell has been prejudiced.

Cottrell argues that it has wasted time and money in deposing Ellis and in preparing its motions. Cottrell asserts that the motions would have been obviated if plaintiff had filed a timely motion to withdraw. Cottrell also argues that it has been prejudiced because it revealed a "blueprint" for its trial strategy when its counsel questioned Ellis during his deposition, and when it filed the arguments contained in its *Daubert* motion.

We agree that had plaintiff filed his motion to substitute Ellis earlier, Cottrell could potentially have avoided some motion practice. We also agree that Cottrell may have revealed some amount of trial strategy in its questioning and motions. Although Cottrell did not provide the Court with any detail as to which questions or arguments Cottrell considered strategic, we nonetheless reviewed Ellis' deposition and the two motions Cottrell filed.

In the deposition, the majority of questions were of a general nature or were focused on

---

[37] Fed. R. Civ. P. 37(c)(1); *see Sherrod*, 223 F.3d at 612.

7

Ellis's conflicts of interest,[38] the designs he advocated,[39] and his personal notes regarding his knowledge of the trailer and plaintiff's fall.[40] But Cottrell posed some arguably strategic questions when counsel specifically called attention to certain aspects of the trailer's design. For example, Cottrell asked detailed questions about Ellis' knowledge of the non-skid tread surface[41] and his knowledge of the fall arrest safety designs that are preferred by teamsters, required by regulation in Canada, or used by iron and scaffold workers.[42] Because these questions relate to Cottrell's defense of the case, we find they could be prejudicial.

Likewise, Cottrell already filed a *Daubert* and summary judgment motion relating to Ellis, and in that motion asserted arguments that provide some insight into its case. For example, the motion discusses safety practices used by teamsters in the U.S. and Canada, and cites to various cases to support the invalidity of Ellis' suggested alternatives.[43] A plaintiff could arguably use this information to its benefit prior to securing an expert. So, again, there is some element of prejudice to Cottrell, combined with the cost of filing potentially unnecessary motions.

### B. Bad Faith

Next we consider whether the three-month delay between Ellis' deposition and plaintiff's motion to withdraw constituted bad faith. Or, in the context of Rule 37, the question is whether plaintiff's delay was substantially justified.

Where an expert has conflicts of interest that are discovered by the retaining counsel only

---

[38] Pl's Resp to Mt to Dismiss, Exh. 4, Ellis Dep. at 118-60, dkt. 87.
[39] *Id.* at 35-43, 172-73.
[40] *Id.* at 67-116.
[41] *Id.* at 16-21.
[42] *Id.* at 161-169.
[43] Cottrell's *Daubert* Mot., 6-8.

after the expert is retained, bad faith is not necessarily inherent in the late discovery.[44] But few cases discuss this factor in the specific context of Rule 26 discovery violations.[45] We, therefore, turn to the context of electronic discovery for an analysis of bad faith caused by delays in discovery. Bad faith is defined as "conduct which is either intentional or in reckless disregard of a party's obligations to comply with a court order."[46] It also "requires the intent to hide unfavorable information."[47]

We find it helpful to again review the time line of events. We begin at Ellis' May 16, 2011 deposition, when the parties obtained record knowledge of Ellis's conflicts. Just over one month later, Cottrell's counsel warned plaintiff's counsel of the conflicts by phone and letter. Plaintiff's counsel did not respond. One week later, Cottrell filed its motion to bar Ellis, which detailed the conflicts of interest.[48] Then Cottrell filed its summary judgment and *Daubert* motion two weeks after the motion to bar. Despite these filings and the letter, plaintiff's counsel did not file his withdrawal motion until August 8, 2011, nearly three months after Ellis' deposition and almost a week after the discovery cutoff date of August 4, 2011.

Plaintiff asserts that his "diligence in attempting to meet case management requirements cannot be questioned."[49] He justifies his delay by reporting that the attorney who presented Ellis at

---

[44] *See Payless Shoesource Worldwice v. Target Corp.*, No. 05-4023-JAR, 2008 WL 973118, *11(D. Kan. Apr. 8, 2008) (finding no bad faith even where the conflicts were never disclosed by the withdrawing expert).
[45] *See Spearman Industries*, 138 F.Supp.2d at 1094-95 (simply finding "no evidence of bad faith" where an important expert report was disclosed late); *see Lincoln Nat'l Life Ins. Co. v. Transamerica Financial Life Ins. Co.*, No. 04-396, 2010 WL 3892860, *4 (N.D. Ind., Sep. 30, 2010) (imposing sanctions without any discussion of bad faith).
[46] *Marrocco v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992)
[47] *Jones v. Bremen High Sch. Dist. 228*, 2010 WL 2106640, *6 (N.D. Ill. May 25, 2010) (citing *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) (refusing to impose an adverse inference sanction on a party for lack of a showing of intent to hide adverse information)).
[48] Cottrell's Mot. to Bar, 1.
[49] Pl.'s Reply, 6.

9

his deposition left the firm shortly after the deposition.[50] Plaintiff's counsel argues that due to the associate's departure, he first received warning of the conflicts from Cottrell's phone call a month after the deposition. Plaintiff's counsel then asserts that he was unable to address the issue for six weeks because of pressing matters in a complicated Mississippi-based trial. Curiously, plaintiff's counsel does not explain when exactly his associate left the firm or any reasoning for his lack of communication with the associate prior to his departure.

Although plaintiff's proffered excuses give some explanation for his neglect of this case, we reject his claim that his obligation to recognize the possible conflicts arose only after Cottrell notified him by letter and phone on June 29, 2011, over a month after the deposition. We also disagree with plaintiff that the six-week delay between the notifications and plaintiff's motion to substitute constituted a prompt response to such serious allegations against an indispensable witness.

But we have also found nothing in the record to suggest that plaintiff's counsel intended to hide the conflicts, as required for a finding of bad faith.[51] Cottrell has neither pointed to any such evidence, nor provided any case law that would support a finding of bad faith. Though lacking detail, plaintiff's narrative offers an explanation for the circumstances that gave rise to his negligence. With that, though it is fair to state the plaintiff's delay was not substantially justified, he did not prevent Cottrell from learning about the conflicts.[52] Plaintiff's late filing also appears to be his first and only

---

[50] Pl.'s Reply, 8.

[51] *See Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998)(stating that no one could doubt that documents "were destroyed *intentionally*" but noting that 'bad faith' "means destruction for the purpose of hiding adverse information.").

[52] *See Marrocco*, 966 F.2d at 221-24 (sanctioning defendant with a directed verdict in the plaintiff's favor because it lost essential evidence in violation of a protective order and failed to notify the plaintiff or investigate the loss); *Larson v. Bank One Corp.*, No. 00-2100, 2005 WL 4652509, *13 (N.D. Ill., Aug. 18, 2005).

discovery violation.[53] These factors lead us to conclude that counsel's actions were not in bad faith.

### C. Plaintiff's Ability to Cure Prejudice if Substitution is Permitted

Now we address whether Cottrell's prejudice can be adequately alleviated if we permit substitution. Even where a court finds substitution proper, courts may limit the scope of the testimony that the new expert may give.[54] A substitute expert's testimony and report are often restricted to the same subject matter as the prior expert, but the substituting expert may express his opinions "in his [or her] own language" rather than being limited to merely authenticating and confirming the prior expert's conclusions verbatim.[55] However, some courts have restricted substituting experts in precisely that manner to prevent plaintiffs from designating a superior expert after the deadline for expert disclosures.[56] To "'minimize the inevitable prejudice...caused by the substitution,'" substitutions have been permitted on the condition that substituting experts limit their testimony to "establishing the veracity and integrity of [the original expert] and the conclusions reached in [the] original expert report."[57] Likewise, to redress the prejudice caused where resources are wasted preparing for the disqualified expert, Rule 37 permits a court to award costs to the blameless party to offset the unnecessary discovery.[58] Imposed cost-sharing is a standard method of alleviating prejudice.[59]

---

[53] *See e360 Insight, Inc.*, 658 F.3d at 642 (finding a plaintiff who consistently violated discovery deadlines and court orders avoided dismissal but was sanctioned with money damages and stricken witnesses).
[54] *Lincoln Nat'l Life Ins. Co.*, 2010 WL 3892860 at *2.
[55] *Id.* at *3 (citing *Morel v. Daimler-Chrysler Corp.*, 259 F.R.D. 17, 22 (D.P.R. 2009)).
[56] *Lincoln Nat'l Life Ins. Co.*, 2010 WL 3892860 at *2.
[57] *Doctor's Associates, Inc. v. QIP Holder LLC*, 2009 WL 5184404 (D. Conn. Dec. 23, 2009).
[58] Fed. R. Civ. P. 37(c)(1)(A).
[59] *See e360*, 658 F.3d at 641 (ordering plaintiff to pay monetary sanctions after discovery violations);*see Sithon Maritime Co. v. Holiday Mansion*, 1998 WL 433931, *1 (D. Kan. Jul. 30, 1998) (imposing a "reasonable amount" of the expense defendant incurred for its own expert to review and critique the original expert);*see also Vincent v. Omniflight Helicopters, Inc.*, 2009 WL 4262578, *4-5 (E.D. Wis. Nov. 24, 2009) (permitting plaintiff to

Cottrell alleges that if substitution is permitted in this case, Cottrell will be prejudiced in two ways, including (1) revelation of strategy in its deposition of Ellis and in its motions and (2) wasted time and money expended in deposing Ellis and preparing its motions. Plaintiff did not respond directly to these allegations. Instead, he asserts that Cottrell is not prejudiced because its expert has served in several prior auto trailer cases so Cottrell did not "show its hand," or any trial strategy that plaintiff would not have already known.

We note that in the years leading up to this litigation, Cottrell maintained a relationship with Ellis based on Ellis' attempted sale of a safety device to Cottrell in 2005. That relationship then led to the execution of a confidentiality agreement between Ellis and Cottrell.[60] Cottrell was also aware of Ellis' status as an expert in other cases involving Cottrell, and cited to those cases in its filings. Given this relationship, it is difficult to see how Cottrell would not, itself, have known about these conflicts years before this case was filed. Yet Cottrell did not object to Ellis when plaintiff disclosed him as an expert witness in March 2011.[61] Cottrell also waited two months after Ellis' deposition before filing its motion to disqualify.

With that in mind, we know Cottrell is not entirely blameless. Prejudice to Cottrell, therefore, is less because it was not entirely helpless in avoiding unnecessary discovery.[62] That is why we do not find it an appropriate sanction to completely deny plaintiff the opportunity of an expert. As

---

substitute an expert after close of discovery on the condition the plaintiff remedied the prejudice of "waste of time and money" by reimbursing the defendant for expenses it incurred in deposing the original expert, an appropriate condition even though "plaintiff...may not have sufficient resources to meet this condition" because the cost is expected to be borne by counsel).

[60] See Def's Amend. Resp., Exh. 2, dkt. 106.
[61] See Pl's Disclosures.
[62] See Sherrod, 223 F.3d at 608 (finding that where both parties contribute to delayed production or a delayed trial date, prejudice is not as heavy as where one party is entirely helpless in avoiding the unnecessary cost).

stated, that would essentially end the case. We can cure any prejudice by allowing plaintiff to substitute his expert, but restrict the substitute expert's testimony and report to the same subject matter as Ellis.[63] Plaintiff is also required to pay a reasonable portion of Cottrell's costs for its motion to bar.[64] With these conditions in place, any prejudice is significantly reduced.

### D. Effect of Substitution on Trial Date

Where substitution of an expert might interfere with the trial date, courts have discretion to deny the substitution request outright.[65] In this case, the District Judge has already reset the trial date to June 18, 2012.[66] Because the small amount of discovery that will be required by the substitution is unlikely to have any disruptive effect on the new trial date, this factor does not weigh against plaintiff in his request to substitute an expert witness.

### E. Effect of Denying Substitution on the Disposition of the Case

Courts closely examine their decision-making when denial of some requested relief will dispose of the case.[67] Disposing of a case, as a sanction, should be employed "'only in extreme

---

[63] *Lincoln Nat'l Life Ins. Co.*, 2010 WL 3892860 at *3; *see also Doctor's Associates, Inc.*, 2009 WL 5184404 at *5 (minimizing prejudice by requiring that a substitute expert "be limited to establishing the veracity and integrity of [the original expert] and the conclusions reached in [the] original expert report"); *see Dunkin' Donuts Inc. v. N.A.S.T., Inc.*, No. 02-1272, 2005 U.S. Dist. LEXIS 16703, *2 (N.D. Ill. Aug. 2005) (chastising defendant for allowing its substitution expert to prepare a new report despite the Court's order that the new expert must testify "in strict conformity" with the original expert's report).

[64] *See Sherrod*, 223 F.3d at 608.

[65] *See Fulton v. Theradyne Corp.*, No. 06-1321, 2007 WL 772953, *2-4 (N.D. Ill. Mar. 12, 2007) (finding a plaintiff's expert disclosure delay of eight months unjustified, and granting the defendant's motion for summary judgment in part because granting late disclosure would require the court to move back the trial date); *see also Spearman Industries*, 138 F.Supp.2d at 1095 (permitting late disclosure of an expert report in part because the expert had already been deposed by the opposing party, preventing disruption of the trial that might otherwise occur).

[66] Dkt. 102.

[67] *See Spearman Industries*, 138 F.Supp.2d at 1095 (permitting late disclosure of a witness in part because the testimony was the plaintiff's "primary - if not sole - evidence" on an essential issue); *see Fulton*, 2007 WL 772953, *2-4 (considering Rule 37 factors, and the necessity of the expert, in determining whether to allow late disclosure).

13

situations, where there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable.'"[68] Dismissal of a case for late disclosure of an expert report is improper where the late disclosure of an expert report was harmless and it contained the plaintiff's "primary - if not sole - evidence" on a dispositive issue.[69]

Ellis was plaintiff's only expert witness in support of his non-medical claims.[70] Cottrell has pointed to no evidence in the record, nor do we find any, showing that plaintiff's counsel habitually delayed discovery, behaved contumaciously or proved unyielding to lesser sanctions. We acknowledge plaintiff disobeyed the original discovery deadline set by the District Judge when he waited a week after the deadline to file his motion to withdraw Ellis and substitute an expert. However, we do not view this infraction as an "extreme circumstance" warranting the harshest of sanctions.

## V. Conclusion

Plaintiff's motion to substitute his expert witness is granted [dkt. 77]. We find that although plaintiff's late filing of his motion to withdraw and substitute an expert witness prejudiced Cottrell to a certain extent, nothing in the record suggests that plaintiff delayed in bad faith. Plaintiff can remedy the prejudice by shouldering a reasonable portion of the costs of Cottrell's motion to bar and by limiting his substitution expert to Ellis's opinions and reports. This outcome also limits any affect

---

[68] *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992) (quoting *Pyramid Energy Ltd. v. Heyl and Patterson, Inc.*, 869 F.2d 1058, 1061 (7th Cir. 1989)) (affirming dismissal where the plaintiff's "wilful and unexcused violations" of a protective order were found to be "contumacious"); *see also Spearman Industries*, 138 F.Supp.2d at 1095.

[69] *Spearman Industries*, 138 F.Supp.2d at 1095 (permitting late disclosure of an expert report because the sanction of dismissal was disproportionate to the violation).

[70] *See* Pl.'s Disclosures (with reports from four medical doctors but only one mechanical expert, Ellis).

on Cottrell's *Daubert* and summary judgment motion. Cottrell is ordered to submit a bill of costs on or before February 6, 2012, including itemized costs for the motion to bar.

**IT IS SO ORDERED.**

ENTERED: January 26, 2012

Susan E. Cox
**UNITED STATES MAGISTRATE JUDGE**