# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| YASSER ASSAF, | )<br>)<br>) |
| Plaintiff, | ) Case No. 10 CV 0085<br>) |
| vs. | ) Chief Judge James F. Holderman<br>)<br>) Magistrate Judge Susan E. Cox |
| COTTRELL, INC., EAST COAST AUTO TRANSPORT, INC., and EAST COAST TRUCK AND TRAILER SALES, INC., | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Susan E. Cox, Magistrate Judge

Plaintiff, Yasser Assaf, alleges that he was injured when he slipped and fell after exiting a car that he had driven onto the upper level of a trailer manufactured by defendant Cottrell, Inc. ("Cottrell"). Plaintiff claims that his injuries are due to the trailer's lack of safety devices, including the absence of a fall arrest system. This particular dispute, however, is over whether plaintiff's new expert report complies with this Court's ruling that it be limited in scope to that of his first expert's report. When we granted plaintiff leave to substitute his original expert we held that, to minimize any potential prejudice to Cottrell, the new expert report was to be confined to his original expert's findings. We agree with Cottrell that a portion of plaintiff's new expert report should be stricken, but, for the reasons outlined herein, we decline to strike the report in its entirety [dkt. 134].

## I. Background

It is first important to review the background of this case, and why plaintiff has a new expert. On July 6, 2011, Cottrell filed a motion to bar plaintiff's original expert witness, Nigel Ellis, Ph.D., claiming "blatant conflicts of interest" after it learned that Dr. Ellis had *ex parte* communications with Cottrell before, and after, he was retained against it.[1] But before that motion was heard, Cottrell also filed its motion to disqualify Dr. Ellis and for summary judgment. In that motion Cottrell argued that Dr. Ellis' opinions were irrelevant, lacked causation, and were unreliable. The motion also asserted that, without an expert, plaintiff could not sustain his case, warranting summary judgment in favor of Cottrell.[2] Then, before there was a ruling on either Cottrell's motion to bar, or its *Daubert* motion seeking summary judgment, Cottrell filed another motion. This motion sought dismissal of plaintiff's complaint based on the same facts asserted in Cottrell's *Daubert* motion: that plaintiff's divergent account of his accident, between his testimony, answers to interrogatories, and what he purportedly told Dr. Ellis, warranted dismissal for "fraud on the court."[3] Specifically, Dr. Ellis' deposition testimony about his notes referred to a slippery, icy ramp. Dr. Ellis also testified that plaintiff told him that one tire went off the rig after plaintiff loaded the vehicle. But plaintiff's own deposition testimony was that he did not drive the vehicle onto the rig. Plaintiff also denied the presence of icy conditions, with no testimony that one tire slid off the rig.

The district court first ruled on this motion, ultimately denying it, finding that merely pointing out the inconsistency in the plaintiff's statements was insufficient to show a willful intent to provide false testimony.[4] The district court also noted that "the inconsistent statements will

---

[1] Dkt. 57.
[2] Def's Daubert Mt. at 6-8, dkt. 66.
[3] Dkt. 75.
[4] Dkt. 101.

provide the defendants ample ammunition for cross-examination at trial, should the case progress so far."[5]

The district court then granted Cottrell's motion to bar plaintiff's expert due to the conflict of interest (which then mooted plaintiff's motion to withdraw Dr. Ellis). The court also took Cottrell's *Daubert* motion under advisement.[6] At that point, we ruled on plaintiff's motion to substitute his expert. Rather than deny plaintiff the opportunity of an expert, we found that it was sufficient to sanction plaintiff for Cottrell's time and expense in filing its motion to bar, and restricted the substitute expert's testimony and report to the same subject matter as that found in Dr. Ellis' report.[7]

## II. Analysis

That background brings us to the present dispute. First, Cottrell asserts that plaintiff is using its *Daubert* motion - that related to Dr. Ellis - against it. In other words, Cottrell argues that it finds itself in a worse position because plaintiff's new expert, Harvey Cohen, Ph.D., CPE, did not have a full review of Dr. Ellis' admittedly confusing and contradictory notes and deposition testimony. By not showing Dr. Ellis' confusing account of the accident to Dr. Cohen, Cottrell believes plaintiff has eliminated the "ammunition," as the district court put it, that Cottrell once had against plaintiff.

But this is simply not the case. It appears that Cottrell is under the belief that because Dr. Cohen did not review Dr. Ellis' confusing account of plaintiff's accident then, somehow, that contradictory testimony can never come in at trial. Cottrell, however, can still use Dr. Ellis' testimony to discredit plaintiff's version of events (though to what degree is ultimately a decision

---

[5]Minute Order, dkt. 101.
[6]Dkt. 81.
[7]Mem. Opinion at 13, dkt. 113.

to be made by the district court). Contrary to Cottrell's arguments, Dr. Ellis' confusion regarding how the accident occurred has no relation to Dr. Cohen or his expert report.

Plaintiff explains that he did not provide Dr. Cohen with Dr. Ellis' deposition testimony or notes because they were "meaningless." Plaintiff admits that Dr. Ellis' interpretation of his own notes was at conflict with what actually happened, as testified to by plaintiff and Ahmad Fraihat, who was also at the site when plaintiff was injured.[8] So plaintiff has conceded that Ellis' testimony contradicts plaintiff's account of the accident.[9] By not providing Dr. Ellis' confusing testimony to Dr. Cohen, Cottrell argues that plaintiff has cut off by omission the reliability issue. But we do not see it that way. What Cottrell seeks, and what could actually benefit its case, would be to call Dr. Ellis as a witness to impeach plaintiff's account of the events. That "ammunition" is just as available to Cottrell as it was before it filed the motions to bar Dr. Ellis' testimony and to disqualify him. If Cottrell wishes to prove up its impeachment of plaintiff regarding what he told Dr. Ellis about the accident, it is still free to do so by calling Dr. Ellis for this limited purpose. Or, the district court could, in its discretion, require plaintiff to stipulate that Dr. Ellis, if called, would testify that plaintiff gave him a different account of the accident than plaintiff's testimony at trial.

We recognize that what Cottrell wants is to have Dr. Cohen subject to the same reliability problem as Dr. Ellis so he too can be subject to a *Daubert* motion, on reliability. But we cannot recreate that situation for Cottrell. Our holding that plaintiff's new expert report be limited to Dr. Ellis' findings, so as to limit the affect on Cottrell's already filed *Daubert* motion, referred to the common requirement that a substitute expert's theories be the same, and that the testimony not be

---

[8]Pl's Resp. at 7; dkt. 137.
[9]Pl's Resp. at 10; dkt. 137.

"beyond, or in contravention of," plaintiff's original expert.[10] In that sense, Dr. Cohen's report complies with our order and the law. We cannot require, nor would it make sense to, create a situation where plaintiff's expert was provided two versions of how the accident occurred. The credibility of plaintiff is not an issue for plaintiff's new expert to unravel. That is an issue Cottrell can, and should, deal with through cross examination at trial, as the district court has already pointed out.

Cottrell's second issue with Dr. Cohen's report is that he improperly expands on Dr. Ellis' opinion concerning warning labels. Dr. Cohen's report opines that:

> The trailer in question was defective and unreasonably dangerous from a human factors systems safety perspective in that Cottrell:
>
> ***
>
> 2. Did not provide adequate on-product warnings labels.
>    a. No relevant labels/decals in or near the work area addressing the serious fall danger of not maintaining 3 continuous and stable points of contact when working at elevation (ANSI Z535.4-2002, 9.1).
>
> 3. Did not provide adequate safety instructions in or with the operator's manual as a basis for employer training of employees.
>    a. Nothing in or with the operator's manual (whether sufficient or not) addressing the specific means with which Cottrell believed that they provided 3 points of contract, e.g., leave the car door open for gripping (not continuous nor stable), grip corner of vehicle hood (allows only for finger grip), ladder structure (likely too low for power grip while maneuvering on ramp); rather puts the onus for fall safety primarily on the user (Howes, 7/26/11, pp. 51-53, 58, 72-73).

Dr. Ellis' report only mentioned the lack of warnings,[11] and noted that providing a "training video, rails and use of fall arrest systems" were hazard controls that could have been put in place.[12] In

---

[10] *Dunkin' Donuts Inc. v. N.A.S.T., Inc.*, No. 02-1272, 2005 U.S. Dist. LEXIS 16703, *7 (N.D. Ill. Aug. 2005)
[11] Dr. Ellis' Report, Pl's Resp., exh. A at 2, dkt. 138.
[12] Pl's Resp., exh. A at 1, dkt. 138.

comparing the two reports, plaintiff acknowledges that Dr. Ellis' report did not "[describe] in the same detail" the issue of warning labels and safety instructions in the operator's manual. But because Dr. Ellis raised these issues, plaintiff claims that the two reports essentially reveal the same opinions.

As noted, we limited plaintiff's new expert report to avoid prejudice to Cottrell. The question we must ask, then, is whether Dr. Cohen's report - with his more specific mention of warning labels and training - prejudices Cottrell. As plaintiff acknowledges, Dr. Ellis reserved judgment on the issue of warning labels and training because he was not specifically asked to address it. Plaintiff explains that Dr. Cohen simply "amplified" Dr. Ellis' mention of those issues. Though we find that Dr. Cohen's "amplification" on this point may be harmless, to alleviate even the potential for prejudice, we strike the portions of Dr. Cohen's report that describe, in detail, the need for warning labels and training. Dr. Cohen's report may mention them, as Dr. Ellis' report did, but his opinion must stop there. Any additional analysis would be beyond Dr. Ellis' findings.

**IT IS SO ORDERED.**

**Date**: June 5, 2012

                                      **Susan E. Cox**
                                      **UNITED STATES MAGISTRATE JUDGE**