# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 85 | **DATE** | 9/19/2012 |
| **CASE TITLE** |  | Yasser Assaf vs. Cottrell, Inc. et al. | |

**DOCKET ENTRY TEXT**

For the reasons explained in the Statement section of the order, defendant Cottrell Inc.'s "Motion to Exclude the Testimony of Dr. Harvey Cohen under Daubert and for Summary Judgment" [148, 150] is granted in part and denied in part. The court grants summary judgment to Cottrell on Assaf's claim that it is liable under a theory of strict liability (Count I). The court denies Cottrell summary judgment on the other counts, and denies without prejudice Cottrell's motion to exclude Dr. Cohen's testimony. The motion to dismiss of defendants East Coast Truck & Trailer Sales Inc. and East Coast Auto Transport Inc. [156] is denied. A status hearing is set for October 2, 2012.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

On December 6, 2007, plaintiff Yasser Assaf injured himself when he fell from an auto hauler trailer manufactured by defendant Cottrell, Inc., and sold to Assaf's employer by East Coast Truck & Trailer Sales Inc. and East Coast Auto Transport Inc. (the "East Coast Entities"). According to Assaf, the auto hauler trailer had a defective design because it did not provide sufficient safety mechanisms, such as guardrails, handholds, or sufficiently wide catwalks. In this products liability action, Assaf alleges that Cottrell and the East Coast Entities are liable to him under three theories: strict liability (Counts I & V), negligence (Counts II & VI), and breach of implied warranty (Counts III & VII). (Dkt. No. 2, Ex. A.) Assaf also alleges that Cottrell is liable for punitive damages for its "wilful & wanton conduct." (Count IV.) Pending before the court is Cottrell's "Motion to Exclude the Testimony of Dr. Harvey Cohen under Daubert and for Summary Judgment" (Dkt. Nos. 148 & 150) and the East Coast Entities' "Motion to Dismiss" Assaf's complaint. For the reasons explained below Cottrell's "Motion to Exclude the Testimony of Dr. Harvey Cohen under Daubert and for Summary Judgment" is granted in part and denied in part. The court grant's Cottrell summary judgment on Assaf's claim that it is liable under a theory of strict liability (Count I). The court denies Cottrell's request for summary judgment on the other counts, and denies without prejudice Cottrell's motion to exclude Dr. Cohen's testimony. The East Coast Entities' motion to dismiss is denied.

## ANALYSIS

Cottrell's summary judgment motion seeks to exclude the testimony of Assaf's expert, Dr. Harvey Cohen,

| STATEMENT |
|---|

and contends that it is entitled to summary judgment on each of Assaf's claims against it. Because the resolution of the summary judgment motion does not depend on the admissibility of Dr. Cohen's testimony, the court will address the summary judgment motion first.

I.  Summary Judgment

A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "There is no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007). When ruling on a motion for summary judgment, the court must consider the facts before it in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

Initially, the court notes that Cottrell failed to file a reply to Assaf's Local Rule 56.1(b)(3)(C) Statement of Additional Material Facts. (Dkt. No. 160.) Accordingly, all of the facts in Assaf's Local Rule 56.1(b)(3)(C) Statement are deemed admitted for purposes of this motion. *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("The sanction for failing to reply is identical to that imposed for failing to respond: admission of the opposing party's factual contentions.").

Cottrell first argues that it is entitled to summary judgment on all of the claims against it because Assaf has not presented sufficient evidence that the trailer's alleged defect proximately caused his injury. Cottrell is correct that Dr. Cohen does not opine on causation. (Dkt. No. 150 ("Cottrell's SMF") ¶¶ 36-37.) Cottrell errs, however in its assertion that Assaf must have expert testimony to show causation. In support of its argument, Cottrell cites *Show v. Ford Motor Co.*, 659 F.3d 584, 585 (7th Cir. 2011), which applied Illinois law holding that "expert testimony is vital in design-defect suits when aspects of a product's design or operation are outside the scope of lay knowledge." In this case, Assaf's allegations involve only a simple slip-and-fall case in which the aspects of the product at issue are within lay knowledge. A lay jury is capable of evaluating whether the absence of guardrails, handholds, and wider catwalks caused Assaf to fall. Accordingly, Assaf's testimony that when he lost his balance, there was no part of the trailer that he could have grabbed on to regain his balance (Dkt. No. 160 ("Pl.'s SMF") ¶ 16) (the truth of which, again, is deemed admitted for the purposes of this motion) is sufficient to allow a reasonable jury to find that the trailer's alleged defect caused Assaf's injuries.

Next, Cottrell contends that Assaf has not submitted sufficient evidence that the alleged design defect made the trailer unreasonably dangerous, which is a required element of a strict liability claim. *Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 345 (Ill. 2008) ("Under Illinois law, the elements of a claim of strict liability based on a defect in the product are: (1) a condition of the product as a result of manufacturing or design, (2) that made the product unreasonably dangerous, (3) and that existed at the time the product left the defendant's control, and (4) an injury to the plaintiff, (5) that was proximately caused by the condition."). A plaintiff may show a design defect that is unreasonably dangerous in either of two ways. First the plaintiff may use the "consumer-expectation test," which requires the plaintiff to "prove that the product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it." *Show v. Ford Motor Co.*, 697 F. Supp. 2d 975, 980 (N.D. Ill. 2010) (citation and quotation marks omitted), *aff'd*, 659 F.3d 584 (7th Cir. 2011). Second, the plaintiff may use the "risk-utility test," under which "the plaintiff must offer proof that the risk of danger inherent in the product design outweighs its benefits." *Id.* at 981. Assaf states that he can prove that the trailer was unreasonably dangerous under either test (Dkt. No. 162, at 8), but presents evidence and argument related only to the risk-utility test. Moreover, "if the evidence is sufficient to implicate the risk-utility test, a broader test which incorporates the factor of consumer-expectation is applied by the trier of fact." *See*

*Mikolajczyk*, 901 N.E.2d at 352–53. Accordingly, the court will evaluate the sufficiency of Assaf's evidence under only the risk-utility test. *See Cappellano v. Wright Med. Grp., Inc.*, 838 F. Supp. 2d 816, 827 (C.D. Ill. 2012).

Assaf asserts that under that test he need only submit evidence that a condition of the trailer caused his injury, and the burden then shifts to Cottrell to show that the benefits of the challenged design outweigh its safety risks. In support of that contention, Assaf cites *Mikolajczyk*'s statement that under the risk-utility test, "the plaintiff may introduce 'evidence that the product's design proximately caused his injury.'" and that "[i]f the defendant thereafter 'fails to prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs,' the plaintiff will prevail." *Mikolajczyk*, 901 N.E.2d at 336 (quoting *Lamkin v. Towner*, 563 N.E.2d 449, 457 (Ill. 1990)). The *Mikolajczyk* court was merely describing a statement in *Lamkin*, however, and went on to clarify that:

> This burden-shifting formulation of the risk-utility test comes from *Lamkin*, but was not a part of the holding in that case. In fact, the holding in *Lamkin* negates any such burden on the defendant, because this court found that summary judgment for the defendant in that case was proper. If the burden had shifted to the defendant, summary judgment could not have been entered in the defendant's favor.
>
> . . . . [N]o decision of this court has expressly adopted this burden-shifting formulation of the risk-utility test.

*Id.* at 341 (citations omitted). Moreover, another Illinois Supreme Court opinion has clarified that a plaintiff may proceed under the risk-utility test "by presenting evidence that the risk of danger inherent in the challenged design outweighs the benefits of such design." *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 255 (Ill. 2007). Accordingly, the court determines that the plaintiff bears the burden of presenting evidence that the risks of the design outweigh its benefits, and that in the absence of such evidence, summary judgment for the defendant is appropriate. *See Cappellano*, 838 F. Supp. 2d at 832 ("Because Plaintiff has provided this court with no basis for comparing the risk and the benefits, he has not met his burden. In other words, in order to perform the initial balancing under the risk-utility test to determine it the case should go to the jury, this court must have something to balance. It cannot be enough to show that there is a risk without providing any way to balance the risk against the benefits.").

Here, Assaf admits that Dr. Cohen's opinions do not attempt to balance the risks of the trailer's design against its benefits, but relate only to the alleged safety risks of the product. (Dkt. No. 162, at 9.) Moreover, the only evidence Assaf points to that he asserts is relevant to the balancing of the risks and benefits is the testimony of Cottrell's Vice President Phillip Howes about additional safety features that Cottrell used to retrofit the trailers it had sold beginning in 2009, and alternative catwalk designs that Cottrell began testing in 2005. That evidence is irrelevant, however, because the relevant inquiry is into "the availability and feasibility of alternate designs *at the time of the product's manufacture*," not at the time of the plaintiff's injury. *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1154 (Ill. 2011) (emphasis added) (explaining the factors relevant to the risk-utility analysis); *see also Calles*, 864 N.E.2d at 262 (holding that evidence of a substitute product that was available in the same month as the injury is "insufficient to demonstrate that a substitute product was available at the time of the manufacture of the [allegedly defective product]"). The trailer involved in the accident here was manufactured in 2003 (Pl.'s SMF ¶ 3), so evidence about alternative designs available in 2005 or 2009 is not relevant. Moreover, a defendant's subsequent remedial measures are not admissible under Federal Rule of Evidence 407 unless the defendant contests the feasibility of those measures. Cottrell has stated that it will not contest the feasibility of adding additional safety measures to the trailers. (Dkt. No. 163, at 8.) Accordingly, the evidence

is not admissible and Assaf has failed to present evidence allowing the court to balance the risks and benefits of the challenged design. Accordingly, the court holds that Assaf has not presented sufficient evidence to allow a reasonable jury to conclude that the design of the trailer was defective under the risk-utility test.

That holding entitles Cottrell to summary judgment on Assaf's strict liability claim, which plainly requires Assaf to show the existence of a defect. (Assaf's argument that collateral estoppel entitles him to avoid summary judgment on that claim fails, because the prior case in which he asserts Cottrell was found liable for a trailer's design defect involved a different model of trailer.)

Assaf's negligence and breach of implied warranty claims, however, do not require, at least explicitly, a showing of a defect. *See Jablonski*, 955 N.E.2d at 1153-54 ("A product liability action asserting a claim based on negligence, such as negligent design, is based upon fundamental concepts of common law negligence. As in any negligence action, a plaintiff must establish the existence of a duty, a breach of that duty, an injury that proximately caused by that breach, and damages." (citation omitted)); *Brandt v. Boston Scientific Corp.*, 792 N.E.2d 296, 299 (Ill. 2003) ("To succeed on a claim of breach of implied warranty of merchantability, a plaintiff must allege and prove: (1) a sale of goods (2) by a merchant of those goods, and (3) the goods were not of merchantable quality."). Without any briefing from the parties on whether the negligence and warranty claims require Assaf to prove a product defect, the court declines to grant summary judgment to Cottrell on those claims.

II.     Dr. Cohen's Expert Testimony

To be admissible, expert testimony must be both relevant and reliable. *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011). Dr. Cohen's sole opinion is that the trailer was defective because it did not provide sufficient safety mechanisms to protect users from falls. That opinion was plainly relevant to the strict liability claim, but may not be relevant to a negligence or breach of implied warranty claim, which as explained above do not explicitly require a showing of a defect. Nonetheless, the parties have not briefed the relevance of Dr. Cohen's testimony in the absence of the strict liability claim. Accordingly, the court declines at this pretrial stage to rule on the admissibility of Dr. Cohen's testimony, and will instead address the issue, if necessary, at the trial. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether* that expert's relevant testimony is reliable."); *Bielskis*, 663 F.3d at 894 ("[W]e give the district court wide latitude in performing its gate-keeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable." (citation omitted)).

III.    The East Coast Entities' Motion to Dismiss

The East Coast Entities move under Fed. R. Civ. P. 12(b)(6) to dismiss the claims against them. A motion to dismiss under Rule 12(b), however, "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Here, both of the East Coast Entities have filed a responsive pleading. (Dkt. Nos. 21 & 22.) Accordingly, their Rule 12(b)(6) motion is denied as untimely.

IV.     The Importance of Procedure

Finally, the court admonishes the parties to improve their unfortunate lack of attention to following proper procedures in this case. In addition to the East Coast Entities' untimely Rule 12(b)(6) motion, and Cottrell's failure to reply to Assaf's Local Rule 56.1(b)(3)(C) Statement of Additional Material Facts, there have been several other missteps. First, Assaf's response to Cottrell's summary judgment motion (Dkt. No. 162) is thirty-

| STATEMENT |
|---|

four pages long—nineteen pages longer than the fifteen-page limit. L.R. 7.1. Assaf did not ask permission to file the extra pages, nor did he provide a table of cases or a table of contents, as Local Rule 7.1 requires.

For its part, Cottrell calls the court's attention to Assaf's violation of the court's rules (Dkt. No. 163, at 1), but fails to notice that its own memorandum in support of its motion for summary judgment (Dkt. No. 149) spills thirty words onto the sixteenth page. While less blatant than nineteen extra pages, Cottrell's violation is perhaps more egregious because it would have taken little effort to excise the extra thirty words, and Cottrell's failure to do so merely violates the court's local rules without making Cottrell's argument more persuasive.

Next, the East Coast Entities filed their reply in support of their motion to dismiss on September 17, 2012 (Dkt. No. 165), four days after the September 13, 2012, deadline (Dkt. No. 159), but did not ask the court's leave for the late filing.

Because there is enough blame to go around, the court has considered all of the late and oversize filings, has overlooked their deficiencies, and now declines to impose any monetary sanctions against the parties. The parties, however, should not interpret the court's largess as condoning the errant conduct. The court is deeply disappointed with the cavalier attitude that the parties have demonstrated in this litigation. Accordingly the court admonishes the parties that any future violations of the court's rules or orders could readily lead to appropriate sanctions, including, if necessary, monetary sanctions against the parties' attorneys.